## SEELY vs. HILLS, imp.

*May 11 — May 27, 1880.*

*(1) Bond construed.   (2) Pleading breach of penal bond.   (3) Delegation of trust.*

1. The condition of the bond here sued upon (for which see the case) does not require payment by the obligors of any part of the $9,000 subscribed in 1857, by new stockholders, to the cash capital of the Waupun Bank, but only of the previously existing indebtedness of the bank.

2. A complaint for specific relief, or for a discovery, must state some *facts* which show defendant's default and liability; and in an action to foreclose a mortgage given to secure performance of a bond conditioned for the payment of certain indebtedness of a bank out of its assets, a complaint which fails to show the character of such indebtedness, the several amounts constituting it, the persons to whom it was due, the nominal value of the assets of the bank, the amount realized out of them and applicable to such payment, or in what respect or particulars, or in what specific sum, the obligors were in default, is *held* bad on demurrer.

3. The office and duties of a trustee cannot be delegated by him unless there is either an express authority for that purpose conferred on him by the instrument creating the trust, or a consent to such delegation given by all parties interested in the trust.

APPEAL from the Circuit Court for *Fond du Lac* County.

Action to foreclose a mortgage given to secure a bond in the penal sum of $5,000, executed by the defendants Seth E. and *Leander B. Hills* to John N. Ackerman, president of the Waupun Bank, and his successors in office, as trustees for certain new stockholders in said bank, who had subscribed over $9,000 to the capital of said bank to enable it to resume business and meet its liabilities.  The bond states that this subscription was made "with the express understanding and agreement on the part of *L. B. Hills* that all the past indebtedness of the bank over and above its available assets, safe, office furniture and plate, should be paid by him; it being understood and agreed' between the president and directors of said bank lately chosen under its new organiza-

tion, that all the past indebtedness and liability of said bank, whatever the same may prove to be, when ascertained, shall be charged upon the books thereof to the said *L. B. Hills*, and that he is to be credited with the safe, office furniture, plate, cash on hand, and the sum of ―――― dollars, interest and expenses in the purchase of stock to deposit with the comptroller, and the said bank is to retain, hold, and collect as far as the same may prove collectible, all notes, accounts, claims and demands of every name and nature, now due or hereafter to become due to the said Waupun Bank, and when collected, or any part thereof, the same is to be placed on the books of said bank to the credit of the said *L. B. Hills*. And it is further agreed by the said *L. B. Hills*, that for the coming year two-thirds of the net profits of one hundred shares of the capital stock of said bank, retained by him upon the stock books of said bank as full compensation for his services as cashier, shall be retained and placed to his credit on the books of said bank, to liquidate the past indebtedness thereof, unless such indebtedness should otherwise be paid; and that after the first year the entire profit of any stock retained by him shall be placed to his credit, until the entire past indebtedness of said bank, according to the books thereof, is fully paid." The condition of the bond was, that *Leander B.* and Seth E. Hills " shall well and truly pay, or cause to be paid, to the said J. N. Ackerman, president as aforesaid, or his successors in office, two-thirds in nine months from the date hereof, of the past indebtedness and liabilities of said bank, over and above the available assets and collections thereof, as aforesaid, as the same shall appear by the accounts kept by the said bank with the said *L. B. Hills* aforesaid, and the remaining one-third in eighteen months from the date hereof, as by the books shall appear."

The mortgage in suit, upon certain real estate in Dodge county, was executed by the defendants Seth. E. and *Leander B. Hills* and their wives, to such trustees, to secure the per-

formance of the conditions of such bond. The following assignment is indorsed· on the bond: "Pay to —— —— or order. J. N. Ackerman, late and last acting president of the Waupun Bank, without recourse."

After an order sustaining a demurrer to the complaint in this action had been affirmed by this court (44 Wis., 484), and after the cause had been remitted to the circuit court, the complaint was amended so as to allege the following facts: 1. The' defendants Seth E. and *Leander B. Hills*, in the mortgage in suit, covenanted to pay all taxes and assessments upon the mortgaged premises, but have neglected so to do, and plaintiff has been obliged to redeem the lands from tax sales, and paid for taxes and assessments thereon $106, December 8, 1868. 2. At the time of the suspension of said bank, September 30, 1857, and prior to its reörganization, John N. Ackerman and the stockholders mentioned in the bond were creditors of the bank to the amount of about $9,000, for moneys deposited therein; the indebtedness of the bank to other creditors amounted to $2,415; and its available assets, office furniture and plate, with the expenses of purchasing bonds to deposit with the comptroller, credited to *L. B. Hills* on the books of the bank, amounted to $1,590, as appeared from said books and from an accounting had with said *L. B. Hills* at the date aforesaid. 3. The bond secured by mortgage above mentioned " was not among the assets of said bank and no part thereof at the time of its final suspension [in 1861], but was made for the ben- ·efit, payment and security of the stockholders mentioned in said bond, including the said John N. Ackerman, one of their number; and the said mortgage was made to secure to them the payment of the said $9,000 deposited by them in said bank, and also as indemnity against any outstanding indebtedness of said bank which they might become liable for as such stockholders, which amounted at that time to $2,415. 4. Ackerman was trustee of said stockholders for the sole purpose of having the custody of the bond and receiving any moneys

thereon from Seth E. and *L. B. Hills*, and protecting their interests as well as his own therein. 5. On the final suspension of the bank in 1861, its assets were turned over by *L. B. Hills* to one Dodge as assignee thereof. An accounting was thereupon had with said *L. B. Hills*, and it appeared from the books of the bank, that at the end of eighteen months after the making and delivery of said bond, the bank, after deducting the available assets, was indebted in the sum of $4,050, in addition to said sum of $9,000 due the stockholders mentioned in the bond, for money deposited in the bank; and said indebtedness was allowed by said *L. B. Hills* to increase until the final suspension of the bank. The assets of the bank so turned over to the assignee were of small amount, and were insufficient to pay the expenses of assignment; no dividend was ever paid by the assignee; and said stockholders and John N. Ackerman have since the assignment been sued and put to great expense for the debts of the bank which this bond was made to indemnify them against, as well as to secure payment of the $9,000 due them as depositors; and said Ackerman, together with said stockholders, was obliged, among other things, to pay a judgment in the circuit court for Dodge county amounting to $578, on the 18th of April, 1868, "which said judgment was rendered against the Waupun Bank, and which they were sued for as stockholders thereof." 6. The defendants Seth E. and *Leander B. Hills* have failed to comply with the terms of said bond and the conditions of said mortgage in this, "that they nor either of them have never paid or caused to be paid any part of the $9,000, nor any part of the past indebtedness or liabilities of said bank, to John N. Ackerman or his successors in office, as agreed to in said bond, . . . but that the said indebtedness and liabilities of said bank remain wholly unpaid, and said defendants have neglected and omitted to perform any of the agreements therein contained; and the said John N. Ackerman and the said stockholders have been put to great trouble and expense of suits, and have been obliged

to pay large sums of money to satisfy and cancel the indebtedness of said bank, and have suffered great loss and damage by reason of the failure and omission of said defendants *L. B. Hills* and Seth E. Hills to pay said indebtedness of the Waupun Bank according to the conditions of said bond and mortgage, and the full sum of $5,000 is now due thereon," etc.. 7. Certain other persons named as defendants have some interest in or lien or claim upon the mortgaged premises, which interest, lien or claim has accrued subsequently to that of the mortgage in suit; " and it may be possible that said John N. Ackerman may have some interest as plaintiff, yet he disclaims any interest therein, and does not consent to be made plaintiff, and is therefore made defendant." 8. Said bond and mortgage have been duly transferred by John N. Ackerman, the payee and joint owner thereof, by the direction, consent and approval of the stockholders mentioned in the bond, and were duly sold and delivered for a valuable consideration to the plaintiff, April 18, 1868, and plaintiff is now the lawful owner and *bona fide* holder thereof; and said John N. Ackerman and said stockholders have no interest in or claim upon said bond and mortgage.

The relief demanded is, that the mortgaged premises may be adjudged to be sold, and the plaintiff paid the amount due on the bond and mortgage, the $106 paid by him for taxes, with interest, etc.; and that the defendants Seth E. and *Leander B. Hills* be adjudged to pay any deficiency, etc.

*Leander B. Hills* demurred to the complaint on the general ground that it did not state a cause of action, as well as upon the ground that no action could be maintained upon the bond and mortgage except by John N. Ackerman, president of the Waupun Bank, or by his successor in office, or by a trustee duly appointed by the court; and also upon the ground that there was a defect of parties defendant in the omission as defendants of the *cestui-que-trusts,* or the stockholders of the Waupun Bank under its new organization, and the creditors

of that bank under its old organization.    From an order over-ruling the demurrer, the same defendant appealed.

For the appellant there was a brief by *Bashford & Spilde,* and oral argument by *Mr. Bashford:*

1. The complaint shows that the indebtedness of the bank at the time when the bond was given, was $2,415; that *Hills* was entitled to a credit of $1,590; and that the balance, $825, was the amount to which the stockholders were indemnified by the bond in suit.    The complaint does not allege that this balance has not been paid by *Mr. Hills,* or that any part of it has been paid by the stockholders.    Moreover the bond contemplates further credits to be given to *Hills,* viz: (1) Whatever amount should be collected on notes, accounts, claims and demands then due or thereafter to become due to the bank. (2) Two-thirds of the net profits of 100 shares of the capital stock of the bank during the first year thereafter, and the entire profits of such stock after the first year.    No accounting is alleged to have been had between *Hills* as obligor in the bond and the trustee therein named; the accounting between *Hills* as cashier of the Waupun Bank and a third party in 1861 is entirely foreign to this suit; and the indebtedness of the bank shown by that accounting is not alleged to have included any part of the indebtedness which existed when the bond was given and which it was intended to secure.    The complaint shows that the final suspension occurred four years after the reörganization of the bank; and it clearly imports, as the fact is, that the suits therein mentioned, including the one in which judgment was rendered, grew out of the business of the bank subsequent to the reörganization.    It is alleged that the obligors in the bond have not paid any part of the past indebtedness or liabilities of said bank as agreed in said bond, but that said indebtedness remains wholly unpaid.    If any part of the indebtedness of the bank in 1857 remains unpaid, it has long since been barred by the statute of limitations; and the stockholders cannot recover on account thereof, but can

only recover the amount they have actually been compelled to pay on account of such indebtedness. 2. The complaint should state the right, title or claim of the plaintiff with accuracy and clearness. Whatever is essential to his rights and necessarily within his knowledge, ought to be alleged positively and with precision; and even when the fact rests within defendant's knowlege, if it constitutes a material allegation and is the foundation of the suit, it must be clearly stated. Story's Eq. Pl., §§ 241–2, 255–6. The complaint on a penal bond must state the facts creating the liability, and also the facts which constitute the breaches of the bond. 2 .Pin., 209; 25 Wis., 498, 503; 30 id., 68; 31 id., 217; 32 id., 233; 37 id., 43; 40 id., 469; 41 id., 374, 380; 43 id., 507. Averments in a pleading as to the meaning or contents of a paper set forth therein are not admitted by demurrer. *Bonnell v. Griswold*, 68 N. Y., 294; *Dillon v. Barnard*, 21 Wall., 430; Story's Eq. Pl., § 254. 3. The bond created an express trust, with Ackerman, or his successor as president of the Waupun Bank, named as the trustee; and he accepted the trust, and never had a successor in that office. He could not appoint his own successor as trustee by a blank indorsement upon the bond, or in any other manner than that provided in the statute. Upon the petition of any trustee of an express trust, the circuit court may accept his resignation and discharge him from the trust upon such terms as the rights and interests of the persons interested in the execution of the trust may require; but notice of the proceeding is to be given to all parties interested. R. S., secs. 2095, 2098. The same rule has always prevailed in this state, and is as old as the court of chancery. 2 Washb. R. P., pp. 510 et seq.; 2 Story's Eq. Jur., §§ 974–8; Perry on Trusts, §§ 268, 274, 280, 285. If the power of appointing trustees is not expressly given to any one, new trustees can be appointed only by the court as provided by the statute. 1 Perry on Trusts, § 294, and cases there cited; *Bradford v. Belfield*, 2 Sim., 264; *Cole v. Wade*, 16 Ves., 27, 44; 19 id., 423; *McKim v. Handy*,

4 Md. Ch., 228. The *cestui-que-trusts* cannot appoint a trustee to fill the vacancy unless the terms of the power clearly and distinctly authorize such appointment in the particular event which has occurred. *Guion v. Pickett*, 42 Miss., 77. If all the parties interested should consent, a trustee might be relieved from his office without a decree of court; but the transaction would operate as an estoppel rather than as an affirmative transfer of the power. Perry, § 285. In such a case, the consent of the person creating the trust, as well as that of the *cestui-que-trusts*, would be required (*Cooke v. Crawford*, 13 Sim., 91, 96; *Geisse v. Beall*, 3 Wis., 367, 395; Hill on Trustees, *471); and such consent on the part of each should be set forth in the complaint. Plaintiff brings this action in his own name, for his own benefit; if he can maintain it at all, it must be in his own right. Had the trustee power to sell and transfer this bond, and by indorsement thereon convey a valid title to the trust estate? The statute of New York has converted the trustee's ownership of the legal title into a power in trust; and every sale in contravention of a trust expressed in writing is void, even if made under the sanction of the court. Perry, § 334; *Cruger v. Jones*, 18 Barb., 467; *Lahens v. Dupasseur*, 56 id., 266. Our statute is copied from New York. *Ruth v. Oberbrunner*, 40 Wis., 238. Sec. 2091, R. S., declares that when the trust shall be expressed in the instrument creating the estate, every sale, conveyance or other act of the trustee in contravention of the trust shall be absolutely void. Sec. 2094 provides that such trusts shall not descend to the heirs of the trustee, but shall vest in the circuit court. The test of the assignability of a thing in action is its legal capacity to descend on the death of the party to his legal representatives. 1 Wait's Pr., 93. A bond upon which it is necessary to assign breaches and assess damages, is not assignable. *Lewis v. Harwood*, 6 Cranch, 82; *Wescott v. Cole*, 4 McLean, 79; *Scott v. Shreeve*, 12 Wheat., 605; *Knight v. Railroad Co.*, 1 Jones' Law, 357; *Ham v. Hill*, 29 Mo., 275;

*Miller v. Garrett*, 35 Ala., 96; *Sanford v. Sanford*, 2 Day, 559; *Sanders v. Filley*, 12 Pick., 554; *Daniel v. Crooks*, 3 Dana, 64; *Richardson v. Jones*, 1 Ired. Law, 296; *Sutton v. Owen*, 65 N. C., 123; *Turk v. Ridge*, 41 N. Y., 201. When the bank went into liquidation, the interests of the stockholders in this bond, if assignable, would have passed to the assignee under the general assignment. 2 Story's Eq. Jur., § 2740a; 2 Perry on Trusts, 555; 1 id., §§ 386–388; *Hallett v. Thompson*, 5 Paige, 583. 4. In suits respecting the trust property, the *cestui-que-trusts* are necessary parties. Story's Eq. Pl., § 207; *Sup'rs of Iowa Co. v. Railroad Co.*, 24 Wis., 93, 127; *Day v. Wetherby*, 29 Wis., 363, 370. This action seeks to divest the title of the trustee and *cestui-que-trusts* to the trust estate. Ackerman, having resigned the trust, can no longer represent anybody but himself. The decree of the court can only bind those who are brought before it; and all who are sought to be bound by the decree are necessary parties to the action. Wait's Am. Code, 127 and cases cited; Story's Eq. Pl., 72–76 a; id., 76 c and note pp. 84–5.

The cause was submitted for the respondent on the brief of *J. W. Seeley*, with *A. Scott Sloan*, of counsel:

1. The complaint now shows that there was a large past indebtedness of the bank which *Hills* did not pay, to wit, $4,050, after deducting the available assets, and this was in addition to the $9,000 due the stockholders; that *L. B. Hills* was not entitled to any credits as against said indebtedness; that he turned over to the assignee but a small amount of property which could be applied to the bond in question, by its terms; and that the amount was insufficient to pay the expenses of the assignment, and no dividend was paid, and consequently nothing realized. This, on demurrer, is to be taken as true, and leaves the bond in full force without any claim on the part of *Hills* under its terms and conditions, and with nothing to be credited to him thereon. The complaint also shows that Ackerman and the other stockholders for whose benefit the

stock was given, have been sued on the debts of the bank, and, among other things, have paid a judgment for $578, and have lost the whole sum of $9,000 subscribed by them. 2. The trustee had the legal title to the bond and mortgage, and could sell and transfer them, especially with the consent and approval of the *cestui-que-trusts;* and such sale would invest the purchaser with a complete legal title. Perry on Trusts, 328, 334–5, 555; Hill on Trustees, 278. The complaint shows such a sale made April 18, 1868, for a valid consideration. If the *cestui-que-trusts* have any interest, it is in the consideration received on the sale. As against a *bona fide* purchaser they cannot reach the security or things sold. Perry, 57, 598; *Dillaye v. Corn Bank,* 51 N. Y., 345; *Bank of U. S. v. Benning,* 4 Cranch, 81; *Piatt v. Oliver,* 3 McLean, 27. 3. The *cestui-que-trusts* are not necessary or proper parties. Where the suit is instituted merely for the recovery of the trust fund, to reduce the property to money, it is brought by the trustee alone. Barbour on Parties, 440; *Lewis v. Graham,* 4 Abb. Pr., 106; *Ashton v. Atlantic Bank,* 3 Allen, 217; *Adams v. Bradley,* 12 Mich., 346. It is for the trustee to collect the securities, and that is a matter between him and the debtor. When they are collected, the manner of distribution and the rights of the *cestui-que-trusts* are matters between them and the trustee. The owner of the bond and mortgage is the trustee of an express trust, and may sue in his own name. R. S., sec. 407.

ORTON, J. The amended complaint is equally defective, and in the same particulars, as the original complaint, passed upon by this court in the same case. 44 Wis., 484. It fails to state any accounting, or furnish any *data* for an accounting, and to state any facts by which it is made to appear that the obligors of the bond are in default, and indebted in any certain sum whatever. The complaint appears to be based upon a misconception of the terms of the bond in respect to

the indebtedness and liabilities of the bank, which the obligors are bound to pay. The condition of the bond is, that they shall pay the *past* indebtedness and liabilities of the bank out of *its* assets, placed in their hands for that purpose; and the complaint specifically charges that such past indebtedness amounted to the sum of about $2,400; and yet, strange to say, the complaint also charges that they were bound also to pay the sum of $9,000, which certain persons, who are in the complaint called stockholders, had subscribed to enable the bank to resume business and meet its liabilities.

It is perfectly evident that the reimbursement of this $9,000 forms no part of the obligation of the obligors of the bond, and that such stock subscription constituted no part of the past indebtedness and liabilities of the bank which they had assumed. It is rather a part of the assets in their hands, out of which they were to pay the past indebtedness. The complaint also charges, but rather inferentially than directly, that at the end of eighteen months after giving the bond the obligors were liable to pay the sum of $4,050, and that they paid no part of it. This is either other indebtedness than that stated in the bond, or a most unaccountable increase of the $2,400 stated in the bond as about the true amount when it was given.

The general default complained of is the non-payment of any part of this $4,050, and of the $9,000 stock subscription; and no default is specifically charged against the obligors for the non-payment of the $2,400 which they alone assumed to pay by the terms of the bond. What was the character of this past indebtedness which the obligors really assumed to pay? What were the several amounts constituting it, and who were the several creditors of the bank to whom it was due and payable? What was the nominal value of the assets, and what was realized out of them to be applied to their payment? In what respect and particulars, and how, are these obligors in default, and in what specific sum? These are the material and

important questions in this case, and they are all unanswered by the complaint. Does the plaintiff know these facts or have information of them? If not, he has no right to complain, and shows no ground of action. A complaint for specific relief, or for discovery, must state some facts which show the default and liability of the defendant; and this complaint states no such facts.

The complaint is equally groundless in respect to the right of this plaintiff to complain at all, or bring this suit. So far as we know from the complaint, he is a mere stranger and intruder. The bond is given to one John N. Ackerman, president of the Waupun Bank, and his successors in office, as the trustee whose duty it becomes to collect the moneys thereby secured, and out of them to pay whatever may remain unpaid by the obligors, of the past indebtedness of the bank. The plaintiff is not a creditor of the bank, complaining that he has not been paid, or a stockholder, or officer of the bank, or successor of Ackerman as president. He is a mere assignee of the bond by the act of Ackerman alone, and there is no power of appointment in the bond which creates the trust. It is not claimed in the complaint, or on the argument of the demurrer, that Ackerman could in this way divest himself of this express trust by an assignment to a stranger, without the consent of all the parties to the trust interested in it. The creditors of the bank are primarily and directly the *cestui-que-trusts* and beneficiaries of the fund, and the bank remotely and conditionally so, and the stockholders only so in severalty and contingently, if they have any contingent liability at all, which is not shown by the complaint. The complaint shows the consent of only the stockholders, and they are not the creditors of the bank interested in this fund, as we have already shown.

It seems that the bank was very much embarrassed when the bond was given, and in 1861 it made an assignment to one R. C. Dodge for the benefit of its creditors, and all of the assets of the bank were taken possession of by him. It

would seem that the bank, as well as its president, became at that time practically *functus officio;* and yet it is averred that Ackerman, the president of the bank, assigned this bond to the plaintiff as late as the year 1868. By what right? This bond, for the benefit of the creditors of the bank, might or might not (and this question we do not decide) go to the assignee, Dodge, as a part of the securities of the outstanding indebtedness of the bank: but it is quite clear that the stockholders ceased to have any further even contingent interest in it, and Ackerman, as president of the bank, ceased to have any right of disposition of the bond other than its collection. The law, however, is very clear, that "the office and duties of a trustee, being matters of confidence, cannot be delegated by him to another, unless an express authority for that purpose be conferred on him by the instrument creating the trust." Hill on Trustees, § 175; Perry on Trusts, §§ 287, 294.

This principle is elementary, and has only one exception, and that is when the trustee delegates the trust to another with the consent of the *cestui-que-trust* and all other parties interested in the trust; and this needs no citation of authority, for the respondent's learned counsel admits it by the assertion of such consent, treating the stockholders of this defunct bank as the only *cestui-que-trusts* and only parties interested. The circuit court should have sustained the demurrer.

*By the Court.* — The order of the circuit court is reversed, with costs, and the cause remanded for further proceedings according to law.